UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSANNA C.,

                              Plaintiff,

v.                                                                     3:20-CV-0931
                                                                       (ML)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                              Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

SUSANNA
   *Pro se* Plaintiff
5847 Catskill Turnpike Road
Delhi, New York 13753


SOCIAL SECURITY ADMINISTRATION                 MICHAEL HENRY, ESQ.
   Counsel for the Defendant
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER</u>

      Currently pending before the Court in this action, in which Plaintiff seeks judicial review

of an adverse administrative determination by the Commissioner of Social Security, pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

_____

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1

argument was heard in connection with those motions on February 1, 2022, during a telephone conference conducted on the record.  At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1)      Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is DENIED.

2)      Defendant's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED.

3)      The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

4)      Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

5)      The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.

Dated: February 9, 2022
       Binghamton, New York

Miroslav Lovric
United States Magistrate Judge
Northern District of New York

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
—————————————————————————————————————
K.

vs.                    3:20-CV-931

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.


—————————————————————————————————————




                  Transcript of an Order

                 Telephone conference

                  February 1, 2022


          The HONORABLE MIROSLAV LOVRIC Presiding.




                    A P P E A R A N C E S


For Plaintiff:        K., Pro Se


For Defendant:        MICHAEL HENRY, ESQ.


                 *Ruth I. Lynch, RPR, RMR, NYSRCR*
                 *Official United States Court Reporter*
                  *Binghamton, New York  13901*

                                                                    2

1           THE COURT:  So let me start by indicating

2    first that plaintiff has commenced this proceeding

3    pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3)

4    to challenge the adverse determination by the

5    Commissioner of Social Security finding that she was

6    not disabled at the relevant times and therefore

7    ineligible for the benefits that she sought.

8                By way of background, I state as follows:

9                Plaintiff was born in 1957.  I'm not going

10   to indicate the date, month, and day in order to

11   protect the privacy of the plaintiff, but Plaintiff

12   was born in 1957, and Plaintiff is currently

13   approximately 64 years old.  She was 48 years old at

14   the alleged onset of her disability on May 15th of

15   2006.

16                Plaintiff lives with her husband.

17                Plaintiff is approximately 5 feet 6 inches

18   in height and weighs approximately 370 pounds.

19                Plaintiff has a four-year college degree and

20   can communicate in English.

21                Plaintiff's past work experience was as a

22   middle school science teacher.

23                Plaintiff suffers from the medically

24   determinable impairments of morbid obesity;

25   hypothyroidism with thyroid nodules; obstructive sleep

3

1    apnea and periodic limb movement disorder;

2    hypertension; hyperlipidemia; hiatal hernia and

3    resulting gastroesophageal reflux disorder; a history

4    of allergic rhinitis; and reactive airway disorder,

5    variously considered as asthma and chronic obstructive

6    pulmonary disorder, also known as COPD.

7            Plaintiff is prescribed the following:

8            Albuterol for asthma; aspirin for blood

9    clots; atorvastatin, or I should say atorvastatin for

10   cholesterol; auto PAP and oxygen concentrator;

11   benazepril for blood pressure; furosemide for edema;

12   glipizide for blood sugar; isosorbide mononitrate for

13   angina pain; Lantus injection 30 milligrams for

14   control of blood glucose; lovothyroxine for thyroid;

15   metoprolol succinate for heart rhythm issues; and

16   Symbicort inhaler; and Warfarin to prevent blood

17   clots.

18           Plaintiff's activities of daily living

19   include maintaining approximately five properties, by

20   reference transcript at page 551, and repairing

21   people's houses, and I refer to transcript at 322.

22           Plaintiff applied -- Plaintiff applied for

23   Title II benefits initially on November 10th, 2015,

24   alleging a disability since May 15th of 2006, and then

25   she amended her onset date to December 18, 2007,

4

1    consistent with the obtainment of age 50.  The ALJ

2    considered the full initial alleged period of

3    disability.

4             In support of her claim for disability

5    benefits, Plaintiff claims disability based on, inter

6    alia, cardiac disorders, diabetes, obstructive sleep

7    apnea, asthma, kidney disease, reactive airway

8    disease, joint pain, anxiety, endometrial cancer, and,

9    lastly, thyroid disease.

10            Administrative Law Judge Arthur Patane

11   conducted a hearing on November 21st, 2017, to address

12   Plaintiff's application for benefits.

13            ALJ Patane issued an unfavorable decision on

14   January 25th of 2018.

15            The Social Security Administration Appeals

16   Council denied Plaintiff's application for review on

17   September 24th of 2018.  Plaintiff appealed to the

18   U.S. District Court for the Northern District of New

19   York, where the parties stipulated to a remand on

20   February 7th of 2019.

21            On August 22nd, 2019, the Appeals Council

22   issued a remand order.  See transcript at 674 to 675.

23            A second hearing was held on May 19, 2020.

24   ALJ Patane issued a second unfavorable decision on

25   June 1st of 2020.  See transcript at 656 to 650 -- let

5

1   me try that again, transcript at 656 to 666.

2           ALJ Patane decision became the final

3   determination because Plaintiff did not file

4   exceptions to the decision, and the Appeals Council

5   did not assume jurisdiction within 60 days, pursuant

6   to 20 CFR Sections 404.984(d).

7           This action was commenced on August 14th of

8   2020, and it is timely.

9           At the hearing on May 19th, 2020, and at the

10   commencement of this action, Plaintiff was represented

11   by Attorney Peter Gorton.  Mr. Gorton filed a motion

12   to be relieved as attorney, which was granted before

13   the filing of Plaintiff's brief.  Since the withdrawal

14   of Mr. Gorton, Plaintiff has proceeded pro se and has

15   filed a brief in this case.

16           In his decision, ALJ Patane applied the

17   familiar five-step test for determining disability.

18           At step one he concluded that Plaintiff had

19   not engaged in substantial gainful activity since

20   May 15, 2006, through September 30th of 2009, which

21   was the date on which Plaintiff was last insured.

22           At step 2 he concluded that Plaintiff

23   suffers from severe impairments that impose more than

24   minimal limitations on her ability to perform basic

25   work activities, specifically morbid obesity;

6

1    hypothyroidism with thyroid nodules; obstructive sleep

2    apnea and mild periodic limb movement disorder;

3    hypertension; hyperlipidemia; hiatal hernia and

4    resulting gastroesophageal reflux disorder; history of

5    allergic rhinitis; and reactive airway disorder, again

6    variously considered as asthma and COPD.

7            At step three the ALJ, at step three ALJ

8    Patane concluded that Plaintiff's conditions do not

9    meet or medically equal any of the listed

10   presumptively disabling conditions set forth in the

11   commissioner's regulations, focusing on Listing 3.0,

12   which is general respiratory; 4.0, which is

13   cardiovascular; and 9.0, which is endocrine system.

14           The ALJ next determined that Plaintiff

15   retains the residual functional capacity, also known

16   as RFC, to perform light work as defined in 20 CFR

17   404.1567(b), except she could only occasionally climb

18   ramps and stairs; could never climate ladders, ropes,

19   or scaffolds; and needed to avoid concentrated

20   exposure to respiratory irritants.

21           At step four the ALJ concluded that

22   Plaintiff could perform her past relevant work as a

23   middle school science teacher.  The ALJ therefore did

24   not proceed to step five.

25           Now, as you know, this Court's functional

7

1  role in this case is limited and extremely

2  deferential.  I must determine whether correct legal

3  principles were applied and whether the determination

4  is supported by substantial evidence, defined as such

5  relevant evidence as a reasonable mind would find

6  sufficient to support a conclusion.  As the Second

7  Circuit noted in Brault V. Social Security

8  Administration Commissioner, that's 683 F.3d 443, 2012

9  case, the standing is demanding, more so than the

10  clearly erroneous standard.  The Court noted in Brault

11  that once there is a finding of fact, that fact can be

12  rejected only if a reasonable fact finder would have

13  to conclude otherwise.

14          Now, in this appeal Plaintiff raises several

15  contentions and arguments.  First, Plaintiff argues

16  that she did not have any earnings after May 15, 2006,

17  and she disputes that she worked under the table doing

18  home repairs with her husband or that she owned five

19  rental properties.

20          Second, plaintiff argues that the ALJ erred

21  when considering whether she had severe impairments

22  by, A, not stating that her sleep apnea was severe and

23  included many periods of hypoxia;  B, holding that the

24  evidence of record was insufficient to define

25  medically determinable mental impairments between the

8

1   alleged onset date and the date last insured; and, C,

2   holding that the evidence and record was insufficient

3   to find medically determinable impairments of

4   knee/joint issues and edema of the lower extremities

5   between the alleged onset date and the date last

6   insured.

7         Third, Plaintiff argues that through the

8   date last insured, her morbid obesity met or equaled

9   the severity of one of the listed impairments in

10  20 CFR part 404, subpart P, appendix 1.

11        Fourth, Plaintiff argues that the ALJ erred

12  when he found that she had the RFC to perform light

13  work, assigned the opinion of Dr. Dalton little

14  weight, and considered the opinion of Stage agency

15  psychological consultant, Dr. Bruno, who did not

16  physically -- who did not physically assess her.

17        Fifth, Plaintiff argues that the ALJ erred

18  when he found that she would be able to perform as

19  either an elementary or secondary school teacher, as

20  she does not have the mental or physical capacity to

21  perform the position and thus was under a disability

22  from May 15th, 2006, through the date last insured,

23  September 30th of 2009.

24        The Court's analysis is as follows.

25        With respect to Plaintiff's first argument,

9

1    ALJ Patane found that Plaintiff did not engage in

2    substantial gainful activity during the relevant time

3    period, a finding that the parties do not contest on

4    appeal.  As a result, Plaintiff's reported activities

5    of completing home repairs with her husband and

6    maintaining rental properties during the relevant

7    period was properly used, pursuant to 20 CFR

8    Section 404.1529(c)(3)(i), as a relevant factor in

9    evaluating her alleged symptoms and limitations, and

10   Section 404.1571, work that is not substantial gainful

11   activity may show that a claimant is able to do more

12   work than he or she actually did.

13          In addition, as Defendant asserts, the Court

14   is limited to the evidence in the administrative

15   record that was before the agency, and thus

16   Plaintiff's sworn statements in her brief are

17   unavailing.

18          Second, the ALJ supportably determined that

19   Plaintiff's sleep apnea was a severe impairment that

20   significantly limited the ability to perform basic

21   work activities as required by SSR 85-28.

22          The ALJ also supportably determined that the

23   record evidence was insufficient to find medically

24   determinable mental impairments between the alleged

25   onset date and the date last insured.  For example,

10

1    the ALJ noted that although Mr. Ketchel opined that

2    Plaintiff had mental impairments that she had not yet

3    overcome when she moved in 2003, he had not treated

4    her in 13 years when he provided his opinion.  There

5    was no medical records to substantiate his diagnosis,

6    and he did not provide any opinion regarding

7    Plaintiff's functioning during the relevant time

8    period.  It is also noteworthy that Mr. Ketchel, as a

9    social worker, was not qualified to diagnosis mental

10    impairments under the regulations.  See 20 CFR

11    Section 404.1521 and 404.1502.

12           Further, the ALJ supportably determined that

13    the record evidence was insufficient to find medically

14    determinable impairments of knee/joint issues and

15    edema of the lower extremities between the alleged

16    onset date and the date last insured.  For example,

17    although 2007 to 2008 medical notes state that

18    Plaintiff had lower extremity edema, the edema was

19    described as trace, and Plaintiff reported feeling

20    well and did not complain about the edema.  In

21    addition, during a December 2010 cardiology visit,

22    Plaintiff exhibited no edema and reported that she was

23    physically quite active.

24           Third, for the reasons stated in Defendant's

25    brief, Plaintiff has not shown that she had a

11

1   musculoskeletal impairment that met or equalled a

2   listing when considered in combination with her

3   obesity.  Plaintiff has not shown that the records

4   attached to her brief, which are dated 2010 through

5   2018, were not in existence or available to her at the

6   time of the administrative hearing in 2020.  In

7   addition, Plaintiff failed to show that these records

8   might have changed the outcome of the prior proceeding

9   where the medical records from December 2010 reflected

10   that Plaintiff was physically active and reported no

11   physical symptoms, which is strong evidence that her

12   impairments were not as limiting as she alleges.

13       Fourth, the RFC finding was supported by

14   substantial evidence.  The ALJ supportably assigned

15   little weight to the opinion of Dr. Dalton, noting

16   that the record was poorly supported by Dr. Dalton's

17   opinion because primary care and endocrinology records

18   referenced few physical complaints and mostly benign

19   clinical findings with only conservative care and

20   because when she presented with significant

21   respiratory, sleep, energy, and pain complaints in mid

22   2009, they appeared to have mostly resolved with quick

23   implementation after CPAP therapy.  See transcript at

24   663.

25       The ALJ stated that Dr. Dalton's opinion was

12

1    contradicted by Plaintiff's own accounts from February

2    2008 that she told her endocrinologist that she had

3    come -- she had some fatigue and shortness of breath,

4    particularly when climbing stairs.  See transcript at

5    663.

6            The ALJ also noted that in May 2018, upon

7    return to her general practitioner, Plaintiff had no

8    active complaints of chest pain or shortness of

9    breath.  See transcript at 6 -- at page 663.  The ALJ

10   stated that throughout the record Plaintiff informed

11   her medical providers that she was performing work

12   doing home repairs with her husband and maintaining

13   properties.  Thus the ALJ's assignment of little

14   weight to Dr. Dalton's opinion is supported by

15   substantial evidence.

16           Further, in assessing Plaintiff's RFC, an

17   ALJ is entitled to rely on opinions from both

18   examining and nonexamining state agency medical

19   consultants because these consultants are qualified

20   experts in the field of Social Security Disability.

21   See 20 CFR Sections 4704.1512(b)(vi);

22   Section 404.1513(c); Section 404.1527(e).  See also

23   case Frey ex rel. A.O. versus Astrue at 485 Fed

24   Appendix 484 at page 487, a Second Circuit 2012 case.

25   And in there the report of a state agency medical

13

1    consultant constitutes expert opinion evidence which

2    can be given weight if supported by medical evidence

3    in the record.

4            See also the case of Little versus Colvin,

5    that's 14-CV-63, that's found at 2015 West Law

6    1399586 at page 9, and that's a Northern District of

7    New York March 26, 2015, case.  And it stands for the

8    proposition that state agency physicians are qualified

9    as experts in the evaluation of medical issues in

10   disability claims.  As such, their opinions may

11   constitute substantial evidence if they are consistent

12   with the record as a whole.  Therefore, the ALJ was

13   allowed to consider and rely on Dr. Bruno's opinion.

14           Fifth, under 20 CFR Section 404.1529(a), an

15   ALJ cannot rely on Plaintiff's statements alone, and

16   the ALJ must weigh them against all of the other

17   evidence.  Here, the ALJ properly weighed all the

18   evidence and accepted functional limitations that

19   record -- that the record credibly supports.  The ALJ

20   was not required to assume additional limitations when

21   evaluating Plaintiff's ability to do her past work or

22   other jobs in the national economy.

23           So based on this record and based on

24   everything before this Court, I find that as a result

25   Plaintiff's motion for judgment on the pleadings is

14

1    denied.  The defendant's motion for judgment on the

2    pleadings is granted.  Plaintiff's complaint is

3    dismissed, and the Commissioner's decision denying

4    Plaintiff benefits is hereby affirmed.

5              That constitutes the Court's order.

6                   - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25